UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

CATHERINE BREWINGTON,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

    Defendant.

3:13-CV-0400-LRH-VPC

ORDER

Before the court is defendant State Farm Mutual Automobile Insurance Company's ("State Farm") motion for partial summary judgment. Doc. #14.[1] Plaintiff Catherine Brewington ("Brewington") filed an opposition to the motion (Doc. #15), to which State Farm replied (Doc. #23).

Also before the court is plaintiff Brewington's cross-motion for partial summary judgment. Doc. #17. State Farm filed an opposition (Doc. #24), to which Brewington replied (Doc. #25).

**I.    Facts and Background**

This is a breach of contract action between Brewington and State Farm for uninsured motorist ("UM") coverage arising from a motorcycle accident that resulted in the death of Brewington's husband, Purdy Brewington ("Purdy").

///

---

[1] Refers to the court's docket number.

On August 29, 2012, Purdy and Brewington were riding separate motorcycles along State Highway 49 in Sierra County, California. At the same time, non-party Jerry Godbey ("Godbey") was riding his motorcycle along State Highway 49 in the opposite direction. Godbey, coming around a corner, crossed the center lane and collided with Purdy ejecting both riders from their motorcycles. Brewington, who was riding a little behind Purdy, witnessed the collision and called an ambulance. On the way to the hospital, Purdy died with Brewington at his side. As a result of the accident, Brewington became emotionally distraught and was prescribed various medications and treatment.

At the time of the accident, both Purdy and Brewington were insured under an automobile and motorcycle policy issued by State Farm.[2] The policy provides UM coverage for "each person" injured in an accident in an amount up to $250,000, and a total of up to $500,000 for "each accident." Doc. #14, Exhibit A, p. 2.

After the accident, Brewington submitted a wrongful death claim to State Farm on behalf of Purdy. State Farm extended coverage for Purdy's death in the maximum "each person" amount of $250,000. Brewington also submitted a separate UM claim seeking an additional $250,000 in coverage for her own emotional distress from witnessing the accident. State Farm denied Brewington's separate emotional distress claim.

Subsequently, Brewington filed the underlying complaint against State Farm alleging three causes of action: (1) breach of contract; (2) breach of the implied covenants of good faith and fair dealing; and (3) violation of the Nevada Trade Practices Act, NRS 686A.310. Doc. #1. Thereafter, the parties filed the present cross-motions for summary judgment on Brewington's breach of contract claim. Doc. ##14, 17.

///

---

[2] A full and complete copy of State Farm policy no. 057-7500-A14-28A (the operative policy in this action) is attached as Exhibit A to State Farm's motion for partial summary judgment. Doc. #14, Exhibit A.

2

## II. Legal Standard

### A. Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine issue as to any material fact and that the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cnty of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

///

Where, as here, parties filed cross-motions for summary judgment on the same claims before the court, the court must consider each party's motion separately and on its own merits. *Fair Hous. Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations omitted). Accordingly, "the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and opposition to both motions, before ruling on each of them." *Id*. at 1134.

### B. Contract Interpretation

Under Nevada law, insurance policies are contracts, which must be enforced according to their terms. *Continental Cas. Co. v. Summerfield*, 482 P.2d 308, 310 (Nev. 1971). The starting point for the interpretation of any contract is the plain language of the contract. *McDaniel v. Sierra Health and Life Ins. Co., Inc.*, 53 P.3d 904, 906 (Nev. 2002); *see also, Klamatch Water Users Protective Ass'n v. Patterson*, 20 F.3d 1206, 1210 (9th Cir. 1999) ("Whenever possible, the plain language of the contract should be considered first."). When a contract contains clear and unequivocal provisions, those provisions shall be construed according to their usual and ordinary meaning. *Dickenson v. Nevada*, 877 P.2d 1059, 1061 (Nev. 1994). Further, language from an insurance policy must be judged "from the perspective of one not trained in law or in insurance, with the terms of the contract viewed in their plain, ordinary and popular sense." *Siggelkow v. The Phoenix Ins., Co.*, 846 P.2d 303, 304 (Nev. 1993) (citing *Nat'l Union Fire Ins. Co. v. Reno's Executive Air*, 682 P.2d 1380, 1382 (Nev. 1984)). Then, using the plain language of the contract, the court shall effectuate the intent of the parties, which may be determined in light of the surrounding circumstances. *See 2 NGA #2 Ltd. Liab. Co. v. Rains*, 946 P.2d 163, 167 (Nev. 1997); *see also, Burrows v. Progressive Casualty Ins.*, 820 P.2d 748, 749 (Nev. 1991); *Klamatch Water Users*, 20 F.3d at 1210 ("Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself.").

///

///

### III. Discussion

To prevail on a breach of contract claim Brewington must demonstrate: (1) the existence of a valid contract;[3] (2) a breach of that contract by State Farm; and (3) damages resulting from any breach. *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006); *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1240 (D. Nev. 2008).

In her motion, Brewington argues that State Farm breached the insurance policy when it denied coverage for her separate negligent infliction of emotional distress ("NIED") claim. In opposition, State Farm argues that it did not breach the insurance policy because Brewington's emotional distress does not qualify as a "bodily injury" under the policy, and did not arise "in the accident" as required under the policy.

This action presents two issues of first impression in Nevada. The first issue is whether emotional distress claims arising from directly witnessing the death of a loved one fall within the definition of "bodily injury" under the State Farm policy. The second issue is whether emotional distress from directly witnessing the death of a loved one occurs "in the accident" as required by the policy, or is a derivative injury resulting solely from the injuries sustained by the loved one. As both issues are integral to the court's ultimate determination of whether or not State Farm breached the insurance policy, the court shall address both issues below.

#### A. Bodily Injury

As set forth in the policy, for Brewington's NIED claim to qualify for coverage, she must have sustained a "bodily injury" as a result of the accident. *See* Doc. #14, Exhibit A, p. 25 ("[State Farm] will pay compensatory damages for bodily injury an insured is legally entitled to recover from the owner or driver of an uninsured motor vehicle."). Bodily injury is defined in the policy as "bodily injury to a person and sickness, disease, or death that results from it." *Id*. at 16.

---

[3] Here, the parties do not dispute that the underlying insurance policy is a valid and enforceable contract.

5

1    In its motion, State Farm argues that this policy language establishes that emotional distress
2 is not a "bodily injury" under the policy because the definition of "bodily injury" requires an injury
3 to a person's actual body as opposed to any mental or emotional injury. *See* Doc. #14. The court
4 disagrees.

5    Reviewing the relevant policy language, the court finds that State Farm's definition of
6 "bodily injury" is ambiguous. First, State Farm's definition is circular in that the term being defined
7 is used within its own definition: "[b]odily injury means bodily injury to a person and sickness,
8 disease, or death that results from it." Doc. #14, Exhibit A, p.16. Such circular definitions are
9 inherently ambiguous as they require additional information outside the definition to actually define
10 the term being defined. *See e.g., Crabtree v. State Farm Ins. Co.*, 632 So. 2d 736, 744 (La. 1994)
11 (holding that a similar definition of bodily injury - "bodily injury is bodily injury to a person, and
12 sickness, disease or death that results from it" - was ambiguous). If State Farm had truly intended
13 the definition of bodily injury to exclude mental distress (including severe emotional distress like
14 Brewington's which required medication and treatment) as it now requests, State Farm could have
15 defined the term in a more restrictive fashion to only cover external, physical injuries.

16    Second, State Farm's definition supports two reasonable interpretations: State Farm's
17 physical injury interpretation and Brewington's broader mental injury and sickness interpretation.
18 Where language of an insurance policy is subject to two or more reasonable interpretations "the
19 interpretation which favors coverage must be applied." *Crabtree*, 632 So. 2d at 745; *see also Nat'l*
20 *Union Fire Ins. Co.*, 682 P.2d at 1384 (holding that ambiguities "must be construed against the
21 insurer."). As such, the court interprets the term "bodily injury" in the underlying insurance policy
22 to include Brewington's emotional distress.

23    This interpretation is both reasonable and consistent with the rules of contract interpretation
24 in Nevada. *See e.g., Summerfield*, 482 P.2d at 310-311. Further, this interpretation is consistent
25 with those jurisdictions which have already addressed this same issue. For example, in *State Farm*
26 *Mutual Auto Ins. Co. v. Connolly*, 132 P.3d 1197 (Ariz. 2006) the defendant directly witnessed the

6

1  death of a loved one in a car accident and brought a NIED claim against the insurer State Farm.
2  State Farm denied the claim on the basis that defendant had not suffered a "bodily injury" under the
3  policy. The policy in *Connolly* defined "bodily injury" exactly the same as in the present action:
4  "[b]odily injury means bodily injury to a person and sickness, disease or death which results from
5  it." Reviewing the policy, the Arizona Supreme Court determined that State Farm's definition of
6  "bodily injury" was ambiguous, and, consistent with Arizona's similar policy of construing
7  ambiguous policy language in favor of coverage, held that defendant's NIED claim constituted a
8  bodily injury under the policy. 132 P.3d at 1203.

9  Similarly, in *Crabtree*, a plaintiff witnessed the death of her husband in an accident and
10 filed an NIED claim with State Farm which was denied on the basis that emotional distress was not
11 a "bodily injury" under the policy. The Louisiana Supreme Court, finding that State Farm's
12 definition of "bodily injury" was ambiguous, ultimately held that plaintiff's NIED claim constituted
13 a bodily injury under the policy. 632 So. 2d at 744-45.

14 The court finds the legal reasoning, and ultimate conclusions of these other jurisdictions, to
15 be in line with Nevada's policy concerning construing insurance coverage. *See Nat'l Union Fire*
16 *Ins. Co.*, 682 P.2d at 1384. Therefore, the court concludes that "bodily injury" in the State Farm
17 policy includes emotional injuries like Brewington's.

18 **B. "Each Person" Exclusion**

19 State Farm also argues that even if Brewington's NIED claim qualifies as a "bodily injury"
20 under the policy, it still did not breach the insurance policy because her claim is derivative of
21 Purdy's injuries sustained in the accident. *See* Doc. #14.

22 The relevant "each person" provision of the insurance policy provides as follows:

> Subject to if other uninsured motorist vehicle coverage applies, the limit shown under "each person" is the most we will pay from this policy for all damages resulting from bodily injury to any one insured injured in any one accident, including all damages sustained by other insureds as a result of that bodily injury. The limit shown under "each accident" is the most we will pay from this policy, subject to the limit for "each person", for all damages resulting from bodily injury to two or more insureds injured in the same accident.

7

1 Doc. #14, Exhibit A, p. 14.

2     State Farm argues that this provision establishes that any injury that results from the injuries sustained by an insured in the accident, like Brewington's NIED claim, is subsumed into a single "each person" payment and thus, the insurance policy does not provide additional coverage for her emotional distress.

    The court disagrees and finds that Brewington's NIED claim is separate from and not derivative to the injuries Purdy sustained in the accident. Brewington's emotional distress was a direct injury suffered in the accident because, "[u]nlike a loss of consortium claim, in which the tortfeasor's injury to one person indirectly affects another person . . . [Brewington] directly experienced the tortfeasor's negligence." *Connolly*, 132 P.3d at 1203. Brewington was not merely affected because Godbey injured Purdy. Instead, her injury is due to the "unique experience of having witnessed, at such close range as to be in the 'zone of danger,' the event that caused [Purdy's injuries]." *Id*. Thus, her injury is not solely due to the bodily injury sustained by another person which is subsumed under the policy.

    This interpretation is once again consistent with those jurisdictions which have previously addressed the same issue and concluded that NIED claims are separate injuries that are covered under the insurance policy. *See e.g., Connolly*, 132 P.3d at 1202-1203 (holding that defendant's emotional distress claim was caused in the accident and thus, defendant was entitled to coverage under the policy); *Treichel v. State Farm Mutual Auto. Ins. Co.*, 930 P.2d 661, 663 (Mont. 1997) (holding that claimant's NIED claim arose "out of the traumatic personal impact upon her own emotional and physical well-being by actually and immediately experiencing the accident which killed her husband directly in front of her," and therefore, was covered under the policy). Further, this interpretation is consistent with Nevada policy concerning the accrual of NIED claims. Therefore, the court concludes that Brewington's emotional distress is a separate and distinct injury from the injuries sustained by Purdy in the accident, and as such, her NIED claim is covered as a separate injury under the "each person" policy provision.

Based on the court's rulings above, the court finds that State Farm breached the insurance policy by denying coverage to Brewington for her separate NIED claim. Accordingly, the court shall deny State Farm's partial motion for summary judgment and grant Brewington's cross-motion for partial summary judgment.

IT IS THEREFORE ORDERED that defendant's motion for partial summary judgment (Doc. #14) is DENIED.

IT IS FURTHER ORDERED that plaintiff's cross-motion for partial summary judgment (Doc. #17) is GRANTED. Summary judgment is entered in favor of plaintiff Catherine Brewington and against defendant State Farm Automobile Insurance Company on plaintiff's first cause of action for breach of contract.

IT IS SO ORDERED.

DATED this 15th day of September, 2014.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE